IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MAURICE CARR,

    Plaintiff,

       v.

REGINALD B. SCANDRETT, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-3913-TWT

**OPINION AND ORDER**

This is a civil rights case. It is before the Court on the Defendants'
Motion to Dismiss [Doc. 6]. As explained below, the Defendants' Motion to
Dismiss [Doc. 6] is GRANTED in part and DENIED in part.

## I.  Background[1]

This action involves an alleged unlawful seizure and retaliation against
Plaintiff Maurice Carr. The Plaintiff was a Lieutenant with the Henry County
Sheriff's Office ("Sheriff's Office"). (Compl., [Doc. 1], ¶ 5). Defendant Reginald
Scandrett is and was, for all relevant times, the Sheriff of Henry County. (*Id.*
¶ 8). Defendant Leontyne Daniel is and for all relevant times was a Colonel
and Commander of Jail Operations for the Sheriff's Office. (*Id.* ¶ 9).

On July 27, 2023, a Captain of the Sheriff's Office served the Plaintiff
with notice of written counseling alleging a policy violation. (*Id.* ¶ 13). The

---

[1] The Court accepts the facts as alleged in the Complaint as true for
purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941
F.3d 1116, 1122 (11th Cir. 2019).

notice of written counseling permitted the Plaintiff to submit a grievance against the disciplinary action. (*Id.*). Despite disagreeing with the notice, the Plaintiff chose not to submit a grievance. (*Id.* ¶ 14). Then, on August 15, 2023, Defendant Daniel summoned the Plaintiff to her office and told him that the notice was being amended to reflect two counts of Neglect of Duty, which would include a proposed sanction of a seventeen-hour suspension. (*Id.* ¶ 15). Two days later, the Plaintiff submitted a timely rebuttal to the amended sanction notice. (*Id.*¶ 17).

After further reflection, the Plaintiff tendered his resignation on August 18, 2023, which would become effective on August 30, 2023. (*Id.* ¶ 18). Two hours after the Plaintiff submitted his resignation, Defendant Daniel instructed the Plaintiff to report to the executive conference room that afternoon where he would meet with Defendant Scandrett and several members of the Command Staff. (*Id.* ¶ 19). During that meeting, Defendant Scandrett called the Plaintiff a "coward" for resigning and stated that the Command Staff would "assess" his resignation, unequivocally asserting that the Plaintiff was not permitted to resign without permission from the Defendants. (*Id.* ¶ 20).

At approximately 3:50 p.m. the same day, the Plaintiff was summoned to meet with Defendant Daniel and Office Investigator J.L. Boone for purposes of conducting an administrative investigation. (*Id.* ¶ 21). The meeting was

captured by audio and video recording. (*Id.*). At the meeting, Boone read a document informing the Plaintiff that he was being placed on administrative leave with pay. (*Id.* ¶ 22). The Plaintiff was then given the document with direction to sign it. (*Id.* ¶ 23). The Plaintiff briefly considered it, and then said, "all I need are my bags, and I terminate my employment today." (*Id.* ¶ 24). Defendant Daniel then asked the Plaintiff if he would sign it, and the Plaintiff responded, "I will not be signing it, I quit." (*Id.* ¶ 25).

The Plaintiff then stood to leave, and Defendant Daniel told him to sit back down. (*Id.* ¶ 27). The Plaintiff then said, "I am about to leave," and Defendant Daniel replied, "No sir, you're not." (*Id.* ¶ 29). Defendant Daniel then stood and blocked the Plaintiff's path to the only way in or out of the room. (*Id.*). Defendant Daniel was armed while the Plaintiff was not. (*Id.*). The Plaintiff perceived that he was not free to leave. (*Id.* ¶ 31). Defendant Daniel continued to tell the Plaintiff that he needed to sit down and to prohibit him from leaving. (*Id.* ¶¶ 32-33). Approximately sixteen minutes transpired until the Plaintiff was escorted by Boone and another officer to his house to retrieve various equipment, such as his agency identification. (*Id.* ¶¶ 35-36).

When the Sheriff's Office failed to acknowledge his verbal resignation, the Plaintiff followed it up with another one on August 27, 2023, noting that the resignation was effective immediately. (*Id.* ¶ 37). Despite his verbal and written resignations, Defendant Daniel generated a memo on August 30, 2023,

recommending that the Plaintiff be terminated. (*Id.* ¶ 38). This action was allegedly taken to retaliate against the Plaintiff for his verbal resignation made on August 18th and to harm the Plaintiff's ability to get future employment. (*Id.* ¶¶ 39-40). The Sheriff's Office mailed the Plaintiff his belongings along with a notice of termination dated September 1, 2023, stating the termination was effective immediately. (*Id.* ¶ 44).

On or about September 1, 2023, Defendant Scandrett reported or caused to be reported to the Georgia Peace Officer Standards and Training Council ("POST") that the Plaintiff had been terminated. (*Id.* ¶ 47). POST is a Georgia state agency responsible for certifying and disciplining peace officers, such as the Plaintiff. (*Id.* ¶ 49). The report that the Plaintiff was fired triggered a POST investigation, which is currently pending. (*Id.* ¶ 51). That investigation has harmed the Plaintiff's ability to secure and maintain employment as a peace officer. (*Id.*).

After these events, the Plaintiff sought legal representation. (*Id.* ¶ 52). Plaintiff's counsel made a request for "[a]ny and all audio/video recording of any interview of Maurice Carr on August 18, 2023," pursuant to the Georgia Open Records Act. (*Id.* ¶ 53). Defendant Scandrett and the Director of Legal Affairs for the Sheriff's Office responded denying the existence of the audio and video recording of the August 18, 2023, incident. (*Id.* ¶ 55). However, Plaintiff's counsel confirmed that a video does exist and obtained a copy through Boone,

who no longer worked at the Sheriff's Office. (*Id.* ¶ 56). The Plaintiff alleges that Defendants Scandrett or Daniel, acting alone or in concert, caused the deletion of the audio and video recording because the Plaintiff exercised his First Amendment rights. (*Id.* ¶¶ 58-59).

Based on these events, the Plaintiff has asserted claims for unlawful seizure and First Amendment retaliation pursuant to 42 U.S.C. § 1983, false imprisonment, and libel and defamation. (*Id.* ¶¶ 60-101). The Defendants now move to dismiss the claims for failure to state a claim and because of qualified and official immunity.

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d

5

247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III.   Discussion

The Court will start by considering the First Amendment arguments. It will then address the Fourth Amendment claim. Finally, the Court will analyze the state law claims.

### A. First Amendment Retaliation

The crux of the Plaintiff's First Amendment argument is that the Plaintiff broke the employer-employee relationship at the time that he said "I quit." (Compl. ¶ 80). His actions after that point in time including speaking, refusing to sign the document, and seeking records under the Georgia Open Records Act were assertedly protected First Amendment activity. (*Id.* ¶ 81). The Plaintiff then contends that the Defendants retaliated against the Plaintiff for taking those protected activities by filing a report to POST falsely stating that he was terminated when he actually resigned and by destroying the audio and video of the meeting. (*Id.* ¶ 83).

i.    **Failure to State a Claim**

The Eleventh Circuit has described the general standard for stating a retaliation claim as follows: "[T]he commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (2005) (citations omitted), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). When the alleged retaliation occurs against a government employee, the standard set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968) applies:

> First, we consider whether the employee's speech is fairly characterized as constituting speech on a matter of public concern. If it is, we apply the *Pickering* balancing test, which weighs the employee's free speech interest against the interest of the state, as an employer, in promoting the efficiency of the public services it performs. If the employee's interests outweigh those of the state as an employer, we turn to the third prong: whether the speech played a substantial part in the government's decision to discharge the employee. If it did, we must address the fourth prong, which is whether the government has shown by a preponderance of the evidence that it would have discharged the employee regardless of the protected conduct.

*Chesser v. Sparks*, 248 F.3d 1117, 1122-23 (11th Cir. 2001) (quotation marks and citations omitted).

The Defendants argue that the Plaintiff was a government employee when he allegedly made his statements and failed to sign the document. (*See*

Defs.' Br. in Supp. of Mot. to Dismiss, at 6-12, 16). The Defendants assert that the Plaintiff failed to state a claim under *Pickering* because the Plaintiff's statements were not speaking on a matter of public concern and because the Sheriff's Office's interests outweighed the Plaintiff's interests. (Defs.' Br. in Supp. of Mot. to Dismiss, at 6-10). As for the video deletion, the Defendants contend that that allegation does not state a claim because there is only hypothetical harm since the Plaintiff now has the video and because the Defendants' actions would not deter a person of ordinary firmness. (*Id.* at 10-12).

The Plaintiff disagrees. First, he states that the Plaintiff was not a public employee at the time he made the relevant statements and refused to sign the document, and as a result, *Pickering* does not apply. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 8-12). Next, he argues that destruction of requested materials would prevent a person of ordinary firmness from requesting the documents. (*Id.* at 12-15). The Court finds that the Plaintiff states a plausible First Amendment retaliation claim.

### 1. Plaintiff's Statements and Refusal to Sign Document

Starting with the arguments relating to the Plaintiff's statements and refusal to sign the document, the Court finds that the Plaintiff has plausibly alleged that he was no longer an employee at the relevant time. The Plaintiff alleges that he said "I quit," and that he was retaliated against for his speech

and refusal to sign a document. (Compl. ¶¶ 25, 81-85). The Defendants respond in two ways. Neither is persuasive. First, they state that the Court is not required to accept as true the Plaintiff's legal conclusions. (Reply Br. in Supp. of Mot. to Dismiss, at 1-2). While that is a correct statement of law, the Plaintiff has provided legal authority indicating that he was an at-will employee. For example, O.C.G.A. § 34-7-1 states that "[a]n indefinite hiring may be terminated at will by either party." Moreover, the "presumption of employment at will applies to public and private employees." *Zimmerman v. Cherokee County*, 925 F. Supp. 777, 781 (N.D. Ga. 1995) (citation omitted). In response, the Defendants have offered zero legal authority indicating that the Plaintiff was still an employee when he made those statements and refused to sign the document. (Reply Br. in Supp. of Mot. to Dismiss, at 1-2; *see also* Defs.' Br. in Supp. of Mot. to Dismiss, at 16). Based on what is before the Court, this argument must fail.

The Defendants' second response is that the Plaintiff's oral resignation should not be taken seriously because he sent a written resignation later. (Reply Br. in Supp. of Mot. to Dismiss, at 2). That resignation stated that it was effective immediately as of August 27, 2023, over a week after the alleged statements. (Defs.' Br. in Supp. of Mot. to Dismiss, Ex. 2, [Doc. 6-2]). The Plaintiff asserts that he sent that written resignation because the Defendants continued to treat him as if the verbal resignation was not effective. (Compl.

9

¶ 37). At this stage, it would be improper to infer that the oral resignation was not serious. *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1227 (11th Cir. 2018) ("[R]esolution of a motion to dismiss requires the court to accept all factual allegations in the complaint as true and to view them in the light most favorable to the plaintiff." (citation omitted)). At the very least, the factual dispute about the seriousness of the oral resignation prevents this from being decided as a matter of law. *Cf. Buending v. Town of Redington Beach*, 10 F.4th 1125, 1135-36 (11th Cir. 2021).

Therefore, the Court finds that the Plaintiff has plausibly alleged he ended his employment by saying "I quit." Since he was not a government employee at the time he engaged in the allegedly protected actions—and since the Defendants have failed to point to any other basis for using it—the *Pickering* test does not apply. All of the Defendants' objections were based on the *Pickering* test, so these objections fail. Accordingly, the Court will not dismiss this Count for failure to state a claim with respect to the statements and refusal to sign the document.

### 2. Plaintiff's Request for Records

The Defendants' argument relating to the alleged deletion of video evidence applies the general retaliation standard and is thus not dependent upon the Plaintiff being a government employee. (Defs.' Br. in Supp. of Mot. to Dismiss, at 10-12). The Defendants assert that the Plaintiff has failed to

plausibly allege any adverse effect on the protected speech. (*Id.*).

As stated above, a plaintiff asserting a First Amendment retaliation claim must demonstrate that "the defendant's conduct adversely affected the protected speech." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (citation omitted). The Eleventh Circuit has explained that "a defendant adversely affects protected speech if his alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights. We use this objective standard because it gives government officials notice of when their retaliatory actions violate a plaintiff's First Amendment rights." *Id.* at 481 (quotation marks and citations omitted).

The Defendants assert that the Plaintiff has failed to meet this standard because he now possesses the video. (Defs.' Br. in Supp. of Mot. to Dismiss, at 10-12). The Court disagrees. If a person of ordinary firmness knew that the Defendants would delete sought-for records after they were properly requested pursuant to state law, then that could reasonably deter them from making that request.[2] The Court doubts that the Plaintiff's ability to track down the video

---

[2] The Plaintiff's argument is, at least in part, that this deletion was in retaliation for requesting the records. (*See* Pl.'s Br. in Opp'n to Mot. to Dismiss, at 15) ("Leaving aside the issues of spoliation, if one knew that every time, they requested records the records would be destroyed, secreted, or the opposing party would perjure itself in order to avoid production of those records, would that person pursue that action? The answer is obviously, no.") It is unclear whether the claim is broader than that. However, for present purposes, this is sufficient to show an adverse effect.

despite the Defendants' alleged deletion changes that conclusion. For starters, even assuming that finding an alternative source of the video is possible (it will not always be), the mere fact of deleting a record that a person is lawfully entitled to and forcing them to find it on his or her own could reasonably deter a person of ordinary firmness.

Furthermore, the Eleventh Circuit has held that "[i]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Bennett*, 423 F.3d at 1252 (quotation marks and citation omitted). It seems similarly unjust to permit the Defendants to escape liability simply because the Plaintiff—by luck, temerity, or both—was able to track down another copy of the video. The Defendants do not raise any challenges related to the other elements of the claim, so the Court does not reach them. The Court will not dismiss the Plaintiff's First Amendment retaliation claim on failure to state a claim grounds.

### ii.    Qualified Immunity

The Defendants assert that qualified immunity bars this claim. (Defs.' Br. in Supp. of Mot. to Dismiss, at 14-17). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555

U.S. 223, 231 (2009) (quotation marks and citation omitted). "If a public official was acting within the scope of his discretionary authority, the burden falls to the plaintiff to show that qualified immunity is inappropriate." *Jacoby v. Baldwin County*, 835 F.3d 1338, 1344 (11th Cir. 2016) (citation omitted). The burden is on the Defendants to demonstrate that they acted within their discretionary authority. *See Godby v. Montgomery Cnty. Bd. of Educ.*, 996 F. Supp. 1390, 1400 (M.D. Ala. 1998) ("First, the Defendants must show that they are performing an act within their discretionary authority."). If the Defendant does so, then the burden shifts to the Plaintiff, who must: "(1) allege facts that establish that the officer violated his constitutional rights; and (2) show that the right involved was clearly established at the time of the putative misconduct." *Jacoby*, 835 F.3d at 1344 (quotation marks and citations omitted).

The Plaintiff contends that qualified immunity does not even apply because the Defendants have not shown that these actions were done in under their discretionary authority. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 16-17). "The term 'discretionary authority' covers all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (quotation marks and citation omitted). The Defendants assert that the alleged actions fall within their discretionary authority because they were "employment-related actions." (Defs.' Br. in Supp. of Mot. to Dismiss, at

15). However, as stated above, the Plaintiff has plausibly asserted that he was no longer an employee of the Sheriff's Office when the actions took place. Moreover, even if that was not effective, the first written resignation stated that it was effective August 30, and the second one stated that it was effective immediately as of August 27. (Defs.' Br. in Supp. of Mot. to Dismiss, Exs. 1, 2). These both occurred before the Defendants signed a termination notice for the Plaintiff, before they told POST that the Plaintiff was terminated, and well before they destroyed the video evidence. (Compl. ¶¶ 44, 47, 53, 58). Given that, the Defendants have not offered any explanation for how falsely reporting that the Plaintiff was terminated or destroying video evidence are "employment-related actions."

Moreover, the only substantive[3] case they provide is *Barnes v. Bearden*, 357 Ga. App. 99, 104 (2020). (Defs.' Br. in Supp. of Mot. to Dismiss, at 15; Reply Br. in Supp. of Mot. to Dismiss, at 3-4). That case is entirely inapposite. It discusses whether the remedies being requested in the case were forward-looking or backward-looking. *Barnes*, 357 Ga. App. at 102-04. It does not even use the word "discretionary" once. *See generally id.* A defendant cannot meet his or her burden to establish discretionary authority by ignoring the factual

---

[3] The other cases that the Defendants provide are offered for the propositions (1) that a court is to look at state law to determine whether a function is discretionary and (2) that the burden to establish discretionary authority is a light one. (Reply Br. in Supp. of Mot. to Dismiss, at 4).

allegations of the complaint or by pointing to clearly irrelevant case law.[4] Accordingly, qualified immunity does not apply here.

Even if it did apply, the Plaintiff has plausibly asserted a violation of the First Amendment, as described above. As for the "clearly established" element, the Eleventh Circuit "has held since at least 1988 that it is settled law that the government may not retaliate against citizens for the exercise of First Amendment rights" *Bennett*, 423 F.3d at 1256 (quotation omitted). The Court appreciates that the trend since this case has been decided has been to apply constitutional provisions at a more specific level. *See Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) ("[W]e have repeatedly told courts not to define clearly established law at a high level of generality." (citation modified) (quotation marks and citation omitted)). However, general propositions may still be used to defeat qualified immunity in rare cases. *Bailey*, 843 F.3d at 484 (explaining that "a plaintiff may rely on a broader, clearly established principle that should control the novel facts of the situation" to overcome a qualified immunity defense. (citation modified) (quotation mark and citation omitted));

---

[4] To be clear, the Court is not affirmatively finding that the actions taken were outside of the Defendants' discretionary authority. The Court recognizes that the discretionary authority determination is a "low hurdle to clear." *Sims ex rel. Sims v. Forehand*, 112 F. Supp. 2d 1260, 1267 (M.D. Ala. 2000) (quotation marks and citation omitted). However, it is still a hurdle, and the Defendants must say something that is supported by the record or case law before it can clear it. In sum, the Court is simply holding that, at this stage, the Defendants have not provided any basis for concluding that they were acting within their discretionary authority.

*Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (explaining that "[c]ases do not often arise under" the broader, clearly established principle exception (citations omitted)).

The proposition set forth in *Bennett* has been applied as such. *See Bailey*, 843 F.3d at 484 ("Here, the reasoning of *Bennett* and the broad principle it establishes should have put Wheeler on notice that he could not potentially endanger Bailey's life in retaliation for Bailey's exercise of his First Amendment rights."); *Shiver v. City of Homestead*, 2021 WL 5174526, at *9 (S.D. Fla. Oct. 4, 2021) ("In *Bennett*, the Eleventh Circuit recognized a broad, clearly established principle that the government may not retaliate against citizens for the exercise of First Amendment rights." (quotation marks and citations omitted)).[5] The Defendants do not mention *Bennett*, let alone explain why it does not apply here or provide any relevant cases in which the Eleventh Circuit has limited or overruled it. (*See generally*, Defs.' Br. in Supp. of Mot. to Dismiss; Reply Br. in Supp. of Mot. to Dismiss).

Therefore, the Court finds that the broad principle that the government

---

[5] The court in *Shiver* ultimately found that qualified immunity applied, but that decision was based on a "more specific holding" from another Eleventh Circuit case. *Shiver*, 2021 WL 5174526 at *9. Namely, the Eleventh Circuit held in *Rehberg v. Paulk*, 611 F.3d 828, 851 (11th Cir. 2010) that "the specific right to be free from a retaliatory investigation is not clearly established." *Shiver*, 2021 WL 5174526, at *9 (quotation marks and citation omitted). That specific rule does not apply here, and the Defendants do not point to any other specific rule that would apply here.

cannot retaliate against citizens for the exercise of First Amendment rights was clearly established at the time relevant here. Since the Plaintiff has plausibly alleged that the Defendants retaliated against him for his First Amendment activity, he has alleged a violation of clearly established law. The Court will not dismiss this count.

### B. Fourth Amendment

The Plaintiff's theory of its Fourth Amendment claim goes as follows. When the Plaintiff stated, "I quit," he ended his employment with the Sheriff's Office and became a private citizen. (Compl. ¶¶ 25-26). After that point, Defendant Daniel told the Plaintiff to sit down, stood, and blocked the Plaintiff's path to the only door. (*Id.* ¶¶ 27, 29). The Plaintiff told Defendant Daniel "I am about to leave," and Defendant Daniel replied, "No sir, you're not." (*Id.* ¶ 29). Defendant Daniel was armed at the time, and the Plaintiff was not. (*Id.*). Then, Defendant Daniel said even more forcefully, "I have said it three times and I am now directing you to sit down." (*Id.* ¶ 32). Defendant Daniel refused to allow the Plaintiff to leave even though the Plaintiff reiterated that his resignation was already effective. (*Id.* ¶¶ 33-34). The alleged detention lasted for approximately sixteen minutes. (*Id.* ¶ 35). The Plaintiff alleges that he actually and reasonably believed he was not free to leave during that time and that no reasonable officer would have believed that there was probable cause to believe that the Plaintiff committed a crime. (*Id.* ¶¶ 28, 30-31).

Accordingly, the Plaintiff alleges that Defendant Daniel unlawfully seized him. (*Id.* ¶¶ 60-72). The Defendants argue that the Plaintiff fails to state a claim and that qualified immunity bars this claim. (Defs.' Br. in Supp. of Mot. to Dismiss, at 12-18).

The Court will start and end its analysis with the Defendants' qualified immunity argument. Unlike the actions taken under the First Amendment, the Plaintiff concedes in the Complaint that Defendant Daniel was acting within her discretionary authority during the alleged unlawful seizure. (Compl. ¶ 69) ("*The discretionary acts of Defendant Daniel*, as previously enumerated, to wit: While acting under color of her lawful authority as a Colonel in the Henry County Sheriff's Office, Defendant Daniel unlawfully and with malice seized Plaintiff on August 18, 2023 and unlawfully confined him." (emphasis added)). Therefore, the Court finds qualified immunity analysis applicable to the Fourth Amendment claim.

Pretermitting whether the Plaintiff has alleged a constitutional violation,[6] the Court finds that any such violation was not clearly established at the time it was committed. The Plaintiff argues, "[i]t has been firmly and roundly established that citizens have the right to be free from seizure absent

---

[6] The Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. 223, 236 (2009).

arguable probable cause or in certain cases reasonable suspicion." (Pl.'s Br. in Opp'n of Mot. to Dismiss, 21 (citations omitted)). The Plaintiff then states that he did nothing that any reasonable officer could think was the commission of a crime. (*Id.*). Consequently, the argument goes, Defendant Daniel lacked any arguable probable cause or reasonable suspicion to detain the Plaintiff. (*Id.* at 21-22). The Court finds this argument unpersuasive.

Unlike in the First Amendment context described above, courts have applied qualified immunity in the seizure context at a specific rather than general level. *See, e.g., Michigan v. Chesternut*, 486 U.S. 567, 572 (1988) (noting "this Court's clear direction that any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account all of the circumstances surrounding the incident in each individual case." (quotation marks and citation omitted)); *Reyes v. Maschmeier*, 446 F.3d 1199, 1203 (11th Cir. 2006) ("Because claims brought under the Fourth Amendment are context specific, a review of prior decisions is helpful in discerning how the Fourth Amendment applies in the public employment context."). The cases to which the Plaintiff cites all involve situations in which a police officer claimed that the detained person committed a crime. *See Hardigree v. Lofton*, 992 F.3d 1216, 1230 (11th Cir. 2021) ("Hardigree was arrested and charged with disorderly conduct, obstruction, and simple battery."); *Carter v. Butts County*, 821 F.3d 1310, 1320 (11th Cir.

2016) ("Filbeck contends that he had probable cause to arrest Plaintiffs for three crimes: burglary, criminal trespass, and theft by taking."); *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1291 (11th Cir. 2018) ("Jeffrey Cozzi was arrested for the robbery of one pharmacy and the attempted robbery of another."); *Jackson v. City of Atlanta*, 97 F.4th 1343, 1348, 1357-58, 1360 n. 8 (11th Cir. 2024) (describing the officers' argument that the plaintiff committed criminal activity by moving a barricade and trying to flee). Accordingly, those courts considered whether a reasonable officer in the defendant's position had reasonable suspicion or arguable probable cause that a crime had been committed. *See Hardigree*, 992 F.3d at 1230; *Carter*, 821 F.3d at 1320; *Cozzi*, 892 F.3d at 1294; *Jackson*, 97 F.4th at 1356.

Here, Defendant Daniel did not detain the Plaintiff because she thought he had committed a crime. Instead, she detained him pursuant to her (allegedly mistaken) authority as his supervisor, as she was keeping him there to sign the administrative leave form. (Compl. ¶¶ 22-24). Thus, the relevant inquiry is not whether it was arguable that the Plaintiff had committed a crime, but rather whether he was arguably still under Defendant Daniel's supervisory authority.

The Eleventh Circuit has held that "a claim that a government supervisor has seized a public employee in violation of the Fourth Amendment must allege circumstances that implicate more than the obligations that arise

from the employment relationship." *Reyes*, 446 F.3d at 1204. "However, workplace interactions can become seizures." *Id.* (citation omitted). "The clearest example of this type of transformation is from a citizen's consensual conversation with law enforcement personnel to an arrest of that citizen." *Id.* (citation omitted). As an initial matter, it is unclear what circumstances "implicate more than the obligations that ar[o]se from the employment relationship." *Id.* No criminal arrest was made, and the purpose of the meeting was to sign a form about being put on administrative leave from his employment. (Compl. ¶¶ 22-24, 35-36).

Moreover, even if the Complaint plausibly allege that Defendant Daniel's actions rose to the level of a seizure, that alone is not sufficient. "[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation marks and citation omitted). Consequently, it must have been apparent from the law at the time of these events that if an officer is having a meeting to inform an employee that they are being placed on administrative leave and the employee states that he quits, then she must immediately let him go and not try to get him to sign the acknowledgement or identify the location of his work-issued items. The Plaintiff provides no basis from which Defendant Daniel would be on such notice. Therefore, the Court finds that Defendant Daniel did not violate any clearly established law and

will consequently dismiss Count I.

## C. State Law Claims

Finally, the Defendants challenge the Plaintiff's state-law claims of false imprisonment and defamation as barred by official immunity. Under Georgia law, "[t]he doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity." *Cameron v. Lang*, 274 Ga. 122, 123 (2001) (citation omitted). Through this doctrine, "public officers and employees may be held personally liable for negligence relating to their official duties only when performing 'ministerial' acts; 'discretionary' acts are only subject to suit when performed with actual malice or intent to cause injury." *Mommies Props., LLC v. Semanson*, 366 Ga. App. 153, 159 (2022).

"The Georgia Supreme Court has defined actual malice in th[e official immunity] context to mean a deliberate intention to do wrong." *Gates v. Khokhar*, 884 F.3d 1290, 1304 (11th Cir. 2018) (quotation marks and citation omitted). "Likewise, the phrase 'actual intent to cause injury'—as used in Georgia's official immunity provision—means an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Id.* (quotation marks and citation omitted).

### i.    False Imprisonment

Starting with the claim for false imprisonment, the Plaintiff again

22

concedes in the Complaint that Defendant Daniel was performing a discretionary act when she allegedly detained the Plaintiff. (Compl. ¶ 76) ("The *discretionary acts* of Defendant Daniel were . . . Defendant Daniel unlawfully and with malice detained Plaintiff on August 18, 2023, depriving him of his personal liberty. This interaction, as described herein, constitutes false imprisonment under state law and caused Plaintiff damage." (emphasis added)). Consequently, the Plaintiff must allege actual malice or intent to cause injury to avoid official immunity.

The Plaintiff argues that he has done enough to allege actual malice and intent to harm because the Complaint states, "[a]ll Defendants were acting with not only callous indifference to those clearly established rights of plaintiff but acting with actual malice with the intention of doing Plaintiff harm and doing wrong." (Compl. ¶ 12). He then cites to a case applying Rule 9(b)—*U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1224 (11th Cir. 2012)—to support the argument that he may plead intent generally. (Pl.'s Br. in Opp'n of Mot. to Dismiss, at 24)

This argument fails. For starters, it appears that the Plaintiff misunderstands the pleading standard.

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But "generally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading

23

> discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8. And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

*Iqbal*, 556 U.S. at 686-87 (citations omitted).

Put simply, the Plaintiff's bald allegation that the Defendants acted with actual malice and the intent to cause injury is insufficient to survive a motion to dismiss. If a plaintiff could allege intent and malice so facilely, it would vitiate the protection of an immunity that is meant to be an immunity from litigation, not just liability. *See Cameron*, 274 Ga. at 123 ("The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection *from suit* in their personal capacity." (emphasis added) (citation omitted)). The Plaintiff fails to marshal a single fact related to the alleged detention that plausibly shows that Defendant Daniel acted with actual malice or intent to cause injury to the Plaintiff. (*See* Pl.'s Br. in Opp'n of Mot. to Dismiss, at 24). Therefore, the Court will dismiss Count II on official immunity grounds.

### ii.    Libel and Defamation

As for the libel and defamation claim, the Plaintiff does not seem to contest that the Defendant Scandrett was performing discretionary acts under Georgia law. Even so, the Plaintiff alleges that he submitted a resignation that would be effective on August 30, 2023. (Compl. ¶ 18). Then, in a meeting

occurring just hours after the Plaintiff submitted that resignation, Defendant Scandrett called the Plaintiff a "coward" for resigning. (*Id.* ¶¶ 18-20). Later that afternoon, the Plaintiff verbally resigned during his meeting with Boone and Defendant Daniel, which was said to be effective immediately. (*Id.* ¶¶ 24-25). Then on August 27, 2023, the Plaintiff submitted a second written resignation that was said to be effective immediately. (*Id.* ¶ 37). The Plaintiff later received a notice of termination dated September 1, 2023, stating that he was terminated effective immediately. (*Id.* ¶ 44). On or about September 1, 2023, Defendant Scandrett falsely reported or caused to be reported to POST that Plaintiff was terminated. (*Id.* ¶ 47).

In other words, the Plaintiff alleges that he informed the Defendants of his resignation three separate times, and after all of those resignations became effective, the Defendant Scandrett—who had called Plaintiff a "coward" for resigning—falsely told POST that the Plaintiff was fired. Contrary to the Defendants' assertions otherwise, these allegations do not suggest that the statement that the Plaintiff was termination was "the product of reasoned conclusions reached" by Defendant Scandrett from his personal observations or careful deliberation. *Smith v. Lott*, 317 Ga. App. 37, 46 (2012) (citations omitted). Based on the above facts, the Court finds that the Plaintiff has alleged sufficient facts, when viewed in the light most favorable to the Plaintiff, to support a plausible finding that Defendant Scandrett acted with actual

malice or intended to cause the Plaintiff (and his career prospects) harm by reporting him to POST. The Court will not dismiss Count IV at this time.

## IV.    Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss [Doc. 6] is GRANTED as to Counts I & II and DENIED as to Counts III & IV.

SO ORDERED, this _____30th_____ day of July, 2025.


THOMAS W. THRASH, JR.
United States District Judge

26